UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOSEPH THOMPSON, JR. | CIVIL ACTION |
| v. | NO. 18-9394 |
| HOUMA TERREBONNE HOUSING, ET AL. | SECTION "F" |

ORDER AND REASONS

Before the Court is the defendants' motion to dismiss the plaintiff's amended complaint for failure to state a claim. For the following reasons, the motion is GRANTED.

**Background**

This is an employment discrimination case. Joseph Thompson, Jr., *pro se*, sued the Houma Terrebonne Housing Authority, Gene Burke, Larry Vauclin, and Barry Bonvillian, alleging:

> I believe I was discriminated against because I have filed a previous complaint against the company Houma Terrebonne Housing Authority. I also believe I was discriminated against because of my race, black; in regards to the previous complaint I filed with HUD, Houma Courier, FBI, and etc. I have been denied the right to a [sic] education on my job, EPA underpayment.

1

Before the expiration of his two-year employment contract, Mr. Thompson alleges that Houma Terrebonne Housing Authority Board of Commissioners fired him on February 8, 2018; three white board members voted to fire him: Chairman Barry Bonvillian, Gene Burke, and Larry Vauclin. In a Charge of Discrimination filed with the Equal Employment Opportunity Commission on July 13, 2018, Mr. Thompson checked boxes indicating that he had been subject to race discrimination and retaliation; he also wrote:

> I. I began my employment with the above Respondent on April 6, 2017 most recently as an Executive Director. On February 8, 2018 I was discharged after a special meeting was called by Chairman Barry Bonvillian, Gene Burks and Larry Vauclin. The company employs over 200 persons.
> II. On January 25, 2018, a special meeting was held to terminate my employment. I was hospitalized from January 20, 2018 until January 25, 2018. I had no previous write-ups or complaints against me. I believe Mr. Bonvillian retaliated against me for refusing to commit illegal acts involving contracts and parish property. Mr. Bonvillian would ask me to give contracts to his friends without it going up for public bid. I refused to do so. Mr. Bonvillian also requested that I sell scatter sites to his friends but again I refused. On another occasion, Mr. Bonvillian wanted me to go to lunch with a contractor. I refused once again. On February 8, 2018 Mr. Bonvillian breached my contract after he terminated my employment.
> III. I believe I have been discriminated against based on my race (Black) and retaliated against in violation of Title VII of the Civil Rights Act of 1964 as amended.

On July 30, 2018, the EEOC issued a right to sue letter. On October 9, 2018, proceeding *pro se*, Mr. Thompson filed this lawsuit and was granted permission to proceed *in forma pauperis*.[1] The defendants moved to dismiss Mr. Thompson's complaint for failure to state a claim. On February 6, 2019, the Court granted the motion to dismiss without prejudice, affording Mr. Thompson an opportunity to amend his complaint.

After being granted two extensions, the plaintiff filed an amended complaint. In his amended complaint, Mr. Thompson restates the original complaint verbatim, includes a list of witnesses that the plaintiff plans to call in support of his claims, states that Bonvillian mistreated him along with other members of the "black community," and, finally, states that he was wrongfully fired because of his race and because he refused to break the law. The defendants now move to dismiss the amended complaint.

---

[1] In his complaint and amended complaint, Mr. Thompson states that, months after his employment was terminated, in June 2018, he reported to the Houma Police Department that Barry Bonvillian stalked him, called Mr. Thompson a "boy," and asked Mr. Thompson to call him (Mr. Bonvillian) "uncle." Mr. Thompson alleges that the media has investigated Mr. Bonvillian for his racist behavior towards members of the black community. Mr. Thompson alleges that he believes Bonvillian and other commissioners were upset and fired him because he refused to participate in deals that violated federal or state regulations. Mr. Thompson alludes to lodging a whistleblower complaint with HUD in late June 2018.

I.

In considering a Rule 12(b)(6) motion, the Court "accept[s] all well-pleaded facts as true and view[s] all facts in the light most favorable to the plaintiff." See Thompson v. City of Waco, Texas, 764 F.3d 500, 502 (5th Cir. 2014) (citing Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys, 675 F.3d 849, 854 (5th Cir. 2012)(en banc)). But in deciding whether dismissal is warranted, the Court will not accept conclusory allegations in the complaint as true. Id. at 502-03 (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

To survive dismissal, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009)(quoting Iqbal, 556 U.S. at 678)(internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,'

4

but it asks for more than a sheer possibility that a defendant has acted unlawfully."). This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. at 678 (internal quotations omitted) (citing Twombly, 550 U.S. at 557). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'", thus, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (alteration in original) (citation omitted).

II.

*A.*

Title VII of the Civil Rights Act of 1964 was enacted "to assure equality of employment opportunities and to eliminate those discriminatory practices and devices which have fostered racially stratified job environments to the disadvantage of minority citizens." McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800 (1973). Employers are prohibited from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race,

5

color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Moreover, "an employer may not discriminate against an employee because the employee has 'opposed any practice made an unlawful employment practice ... or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." See LeMaire v. La. Dep't of Transp. & Dev., 480 F.3d 383, 388 (5th Cir. 2007)(omission in original)(quoting 42 U.S.C. § 2000e-3).

*B.*

Claims of discrimination or retaliation based on circumstantial evidence are analyzed in accordance with the familiar McDonnell Douglas burden-shifting regime. See Caldwell v. KHOU-TV, 850 F.3d 237, 241 (5th Cir. 2017). This three-part framework first requires the plaintiff to make a prima facie case of discrimination (or retaliation). Morris v. Town of Independence, 827 F.3d 396, 400 (5th Cir. 2016). If the plaintiff makes this showing, a presumption of discrimination (or retaliation) arises and the burden of production shifts to the defendant employer to articulate a legitimate non-discriminatory or non-retaliatory reason for the adverse employment action. Id. If the defendant satisfies that burden of production, then the inference of discrimination disappears, and the burden shifts back to the plaintiff, who must prove by a preponderance of the evidence

6

that the proffered reason was merely a pretext for racial discrimination (or retaliation). Id. "A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" Thomas v. Johnson, 788 F.3d 177, 179 (5th Cir. 2015).

To make out a prima facie case of racial discrimination, Mr. Thompson must demonstrate that (1) he is a member of a protected group; (2) he was qualified for the position at issue; (3) he was subject to an adverse employment action; and (4) he was treated less favorably than a similarly situated employee outside of his protected group under nearly identical circumstances. Lee v. Kansas City S. Ry. Co., 574 F.3d 253, 259 (5th Cir. 2009). To establish a prima facie case of retaliation, Mr. Thompson must present evidence that (1) he engaged in protected activity; (2) an adverse employment action resulted; and (3) the protected activity and the adverse action are causally linked. Baker v. American Airlines, Inc., 430 F.3d 750, 754 (5th Cir. 2005)(citations omitted).

Although this "framework...governs the standard of proof at trial," Mr. Thompson "'need not make out a prima facie case of discrimination [or retaliation] to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim.'" See Stone v. Louisiana

Dept. of Revenue, 590 Fed. Appx. 332, 339 (5th Cir. 2014)(quoting Raj v. Louisiana State University, 714 F.3d 322, 331 (5th Cir. 2013)). Rather, at the pleading stage, Mr. Thompson must "plead sufficient facts on all of the ultimate elements of a disparate treatment [or retaliation] claim to make his case plausible." See Chhim v. Univ. of Texas at Austin, 836 F.3d 467, 470 (5th Cir. 2016); see also Stone, 590 Fed. Appx. at 339. To determine if sufficient facts are pled, "it can be helpful to reference the McDonnell Douglas framework on which [the plaintiff] would continue to rely if he based his claim on circumstantial evidence." Chhim, 836 F.3d at 470.

III.

For a second time, the defendants move to dismiss Mr. Thompson's Title VII race discrimination and retaliation claims for failure to state a claim; they contend that Mr. Thompson's allegations, many of which are identical to those advanced in his initial complaint, fail to provide clarity and continue to fall short of the Rule 8 pleading requirement. Again, the Court agrees. The plaintiff has failed to plead sufficient facts to make a plausible claim that he was fired because of his race or that he was retaliated against because he complained about or opposed *discriminatory* practices.

*A.*

In support of his race discrimination claim, Mr. Thompson again alleges that he faced a tangible employment action: he was fired. But for a second time he fails to offer any factual content that might support a Title VII race discrimination claim because he alleges no facts that suggest he was fired *because of his race*. Most of Mr. Thompson's allegations are conclusory and, therefore, not taken as true: these conclusory allegations include that he was "discriminated because of my race, Black;" "stalking;" "discriminated against in violation of Title VII;" "wrongfully fired;" "denied right to education;" and "underpayment." Notably, the only facts alleged that he suggests are indicative of racism are alleged to have occurred *after* he was fired and some do not appear related to his employment. Mr. Thompson suggests that he called the Houma Police Department to complain that Barry Bonvillian was "stalking" him, "calling [Mr. Thompson] a boy," that Bonvillian also "wanted him [Mr. Thompson] to call him [Bonvillian] uncle;" and that Bonvillian asked him, "boy did you get a job yet?" In his amended complaint, Mr. Thompson adds that Mr. Bonvillian has made racist comments directed to members of the black community in general, which have been "investigated [by] Channel 4 CBS News." He also alleges that Mr. Bonvilian told Mr.

Thompson that he should not be wearing a suit, but, rather, that "he should be dressed to work outside with maintenance."

Mr. Thompson fails to allege any facts that would link these alleged Bonvillian statements to Mr. Thompson's employment or February 8, 2018 termination of employment. Rather, it appears that at least some of these statements by Bonvillian are alleged to have occurred more than four months after Mr. Thompson's employment was terminated.[2] Mr. Thompson fails to plead sufficient facts on the ultimate elements of a race discrimination claim that would make his claim plausible.[3] Mr. Thompson offers facts that suggest a mere possibility that Mr. Bonvillian or the other defendants may have acted unlawfully; but from the sparse factual predicate alleged, the Court is simply unable to draw the reasonable inference that, in the context of Mr. Thompson's employment, the defendants discriminated against Mr. Thompson on

---

[2] Mr. Thompson alleges that the Houma Police Department case (in which it is insinuated that he made the complaints about the Bonvillian statements) is "dated June 13, 2018." The Court made this same observation in granting the defendants' motion to dismiss the initial complaint; Mr. Thompson does not even attempt to cure these deficient allegations or to allege facts that, if proved, would entitle him to Title VII relief.
[3] In addition to failing to allege any facts that might support his conclusory assertion that he was fired because of his race, he fails to allege any facts suggesting that he was treated less favorably than a similarly situated employee outside of his protected group under nearly identical circumstances.

the basis of his race.[4]  For a second time, Mr. Thompson has failed to allege facts that would support a plausible Title VII race discrimination claim.

*B.*

Mr. Thompson's second attempt to state a plausible retaliation claim likewise fails.  The only allegation in the amended complaint indicating that Mr. Thompson opposed discriminatory practices is the same allegation from his initial complaint that he filed an EEOC complaint.  But that EEOC complaint was filed *after* he was fired.  Where a plaintiff alleges that adverse employment action occurred before grievances were filed, the plaintiff fails to plead a causal connection between the protected activity and the adverse employment action; the defendants could not have fired Mr. Thompson in retaliation for grievances he had not yet filed.  See Chhim, 836 F.3d at 472 (citations omitted).

Mr. Thompson does not appear to allege that any of Mr. Bonvillian's allegedly racist conduct or remarks occurred in the workplace or during Mr. Thompson's employment tenure, nor does he

---

[4] Mr. Thompson lists witnesses he says he will call to testify on his behalf, but he does not describe or offer any facts within these witnesses' knowledge; he fails to indicate what, if any, facts any of these witnesses might have within their personal knowledge that could possibly support his racial discrimination and retaliatory discharge claims.

allege that he complained about racist conduct in the workplace and that, after that, he was fired. Rather, Mr. Thompson wrote in support of his EEOC complaint that "Mr. Bonvillian retaliated against me for refusing to commit illegal acts involving contracts and parish property." Mr. Thompson also alludes to complaining (about what, it is not clear, but presumably his refusal to engage in "illegal conduct") to "HUD, Houma Courier, FBI[.]" Accepting these allegations as true, Mr. Thompson nevertheless fails to plead facts that state a plausible claim for retaliation under Title VII because his refusal to engage in illegal conduct involving contracts and parish property, or his refusal to go to lunch with contractors, is not protected conduct for the purposes of a Title VII retaliation claim. "To state a claim for retaliation in violation of Title VII, the plaintiff must allege that h[is] employer took an adverse employment action against h[im] in retaliation for engaging in protected conduct." Stone, 590 Fed. Appx. at 339. An employee has engaged in "protected conduct" if he opposed any practice that Title VII makes unlawful. Royal v. CCC & R Tres Arboles, L.L.C., 736 F.3d 396, 401 (5th Cir. 2013). As this Court explained in dismissing Mr. Thompson's initial complaint, assuming that Mr. Thompson refused to engage in illegal acts involving contracts and parish property, this does not constitute opposition to a practice that Title VII makes unlawful.

By failing to allege any facts indicating that he engaged in protected activity within the meaning of Title VII, Mr. Thompson again fails to state a plausible claim for retaliation.

Accordingly, IT IS ORDERED: that the defendants' second motion to dismiss is GRANTED. Mr. Thompson had ample time and opportunity to remedy his pleading deficiencies; the plaintiff's claims are hereby dismissed with prejudice.

New Orleans, Louisiana, June 18, 2019

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE